**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | |
|---|---|
| JOSEPH EATON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:21-CV-0049 JMB |
| MISSOURI DEPT. OF CORR., et al., | ) ) ) |
| Defendants. | ) |

**OPIONION, MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Joseph Eaton, an inmate at Moberly Correctional Center (MCC), for leave to commence this civil action without prepayment of the required filing fee.[1] Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, after reviewing the allegations in plaintiff's complaint, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20

---

[1] On August 9, 2021 plaintiff attempted to pay the full $402 filing fee with a credit card. However, the credit card company reversed the charges in January of 2022. [ECF No. 8]. Therefore, the filing fee has not been paid in this action.

percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim..

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff, an inmate at MCC, brings this action pursuant to 42 U.S.C. § 1983 alleging violation of his civil rights. He names the following individuals as defendants in this action: Anne Precythe (Director, Missouri Department of Corrections (MODOC)); the Missouri Department of Corrections; Ryan Crews (Deputy Division Director); Amanda Lake (Warden); and Ms. Lee (Grievance Officer). Plaintiff sues defendants in their individual and official capacities.

Plaintiff appears to be alleging that his due process rights were violated on March 1, 2021 when he was issued a conduct violation at MCC for violation of regulation 11.1 possession and/or use of a controlled substance and/or intoxicating medication. Plaintiff has attached to his complaint the "Corrective Action Report,"[2] which states:

> Based on R & O's written report /o/ had white powdery residue & crystal-like substances, cut up paper, one rolled up piece of paper burnt on one end with unknown substance inside of it. DHO finds /o/ 2nd CDU in 6 months guilty. Note: NARTEC tested positive for Cocaine.

---

[2]Federal Rule of Civil Procedure 10(c) states that, "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

3

According to the Corrective Action Report, plaintiff made no statement relative to the charges and had no witnesses when he was found with the alleged drug paraphernalia. He also refused to sign the report at the time it was made by Officer B. Simmons who recommended twenty (20) days in the administrative segregation unit, as well as referral to the adjustment board.

Functional Unit Manager Brent Pogue conducted plaintiff's adjustment hearing regarding the conduct violation of regulation 11.1 on March 1, 2021. Plaintiff has not provided any information in his complaint relative to his adjustment hearing in front of FUM Brent Pogue. However, in the grievance appeal response attached to plaintiff's complaint filed by Ryan Crews, the Deputy Division Director of the Division of Adult Institutions for the Missouri Department of Corrections, Mr. Crews indicates that plaintiff did not request any witnesses during the hearing in front of Mr. Pogue.

Despite the Corrective Action Report, plaintiff grieved the violation. He attached to the complaint a copy of his Informal Resolution Request (IRR) form, filed on March 16, 2021. In his IRR, plaintiff states that although the CDV indicated the residue tested positive for cocaine, he had never done cocaine and the only remains left were "burnt cigarette paper." Plaintiff stated that the only substance on his tablet was a prescription medication called Lamictal. He argued that an 11.1 violation could not be charged against him because the prescription was prescribed to him.

Officer B. Simmons signed the IRR in response on April 1, 2021, stating, "You participated in your CDV & was found guilty. It was approved through the appropriate chain of command."

Plaintiff filed a grievance in May of 2021. His grievance was denied, and he filed a grievance appeal at that time. As noted above, plaintiff has attached a copy of the Missouri Department of Corrections' grievance appeal response to his complaint, dated June 10, 2021.

In plaintiff's Statement of Claim in the complaint he asserts:

I was denied my witness and counsel. I requested a witness during CDV writing. Caseworker Lee sent my witness (Lee Harrell #350894) away. My counsel/witness filed an IRR on [Caseworker] Lee[3]. [Caseworker] Lee changed jobs and handled my case again denying my grievance working as grievance officer. . .Denied NARTEC Test results. Denied Urine test results. Denied all findings and evidence. See attached paperwork. I have NEVER done cocaine or been in possession of it…

It is not entirely clear how long plaintiff was assigned to the segregation unit. In one place in the complaint he states that he was assigned to the unit for thirty (30) days. However, in another place in the complaint, it appears that plaintiff may have been in the unit almost sixty (60) days. The Court will presume plaintiff was in the administrative segregation unit for sixty (60) days for the purposes of this Memorandum and Order.

Plaintiff asserts that he is seeking compensatory and punitive damages.

## Discussion

Plaintiff brings this action against defendants in their official and individual capacities. He claims that his due process rights were violated in March of 2021 when he was issued a conduct violation for possession and/or use of a controlled substance and/or intoxicating medication in violation of regulation 11.1 at MCC and assigned to the administrative segregation unit.

After review of the complaint in its entirety, the Court finds that this action is subject to dismissal.

### A. Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal citation omitted). Thus, a "suit against a public employee in his or her official capacity is merely

---

[3] At various times in the complaint plaintiff spells defendant Mrs. Lee's last name as "Lea" and "Lee." For consistency the Court will spell defendant's last name as Lee.

a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Here, defendants are all employees of the Missouri Department of Corrections ("MDOC").  Naming a state official in his or her official capacity is the equivalent of naming the government entity that employs the official – the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).  However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71.

In addition, in the absence of a waiver, the Eleventh Amendment[4] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).  Accordingly, to the extent plaintiff seeks monetary damages against the defendants, his official-capacity claims are barred by the Eleventh Amendment and should be dismissed. *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment.").

Plaintiff's individual capacity claims also fail to state a claim for relief.

**B.  Individual Capacity Claims**

First, the complaint fails to adequately allege facts showing how each named defendant was personally aware of and disregarded a substantial risk to plaintiff's health or safety during his time in administrative segregation.

Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), *see also Martin v. Sargent*,

---

[4]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Plaintiff cannot hold the defendants liable simply because they held supervisory or administrative positions. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983). He has not indicated how any of the alleged defendants failed to deprive him of his constitutional rights except to contend that he did not take cocaine and he does not believe he was afforded proper procedural safeguards relative to his placement in segregation.

However, to the extent plaintiff is attempting to assert that his due process rights were violated simply by his placement in disciplinary segregation, he has failed to state a claim upon which relief may be granted. In the administrative segregation context, the determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011).  First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action.[5] *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003); *see also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally

---

[5] Although plaintiff alleges that his "substantive" due process rights have been violated, it is likely he is referring to his "procedural" due process rights. "To state a substantive due process claim, [a plaintiff] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law.'" *Young v. City of St. Charles, Mo.,* 244 F.3d 623, 628 (8th Cir. 2001) (quoting *Anderson v. Douglas County*, 4 F.3d 574, 577 (8th Cir.1993)). "An alternative way to bring a substantive due process claim is to assert that the government's actions 'either shock the conscience' or 'offend judicial notions of fairness or human dignity.'" *Id.* (quoting *Riley v. St. Louis County of Mo.,* 153 F.3d 627, 631 (8th Cir. 1998)). "To establish a procedural due process violation, a plaintiff need not only show a protected interest, but must also show that he or she was deprived of that interest without sufficient process, *i.e.,* without due process. The due process clause ensures every individual subject to a deprivation the opportunity to be heard at a meaningful time and in a meaningful manner. The circumstances of the deprivation dictate what procedures are necessary to satisfy this guarantee." *Swipies v. Kofka,* 419 F.3d 709, 715 (8th Cir. 2005) (quotations and citations omitted).

7

protected liberty interest"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain his due process claim. *See Phillips*, 320 F.3d at 847.  The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  To assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (internal quotations omitted).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest").  This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.  Additionally, in *Orr v. Larkins*, the Eighth Circuit found that nine months in administrative segregation did not constitute atypical and significant hardship.

8

610 F.3d 1032, 1033-34 (8th Cir. 2010). Thus, even if the Court assumes that plaintiff was in administrative segregation for sixty (60) days, he has not alleged enough to show that he was subjected to a due process violation.

To the extent plaintiff is asserting that he suffered a loss of "good time credits," or an "early-out date" because of the assessment of the conduct violation, there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7 (1979); *Adams v Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Marshall v. Mitchell*, 57 F.3d 671, 673 (8th Cir. 1995). Thus, he cannot establish a due process violation with such a claim.

Similarly, there is nothing in the complaint to indicate that plaintiff suffered from an equal protection violation. The Equal Protection Clause provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The purpose of the equal protection clause ... is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sunday Lake Iron Co. v. Wakefield Tp.,* 247 U.S. 350, 352 (1918).  Unequal treatment of "'those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" *Batra v. Bd. of Regents of Univ. of Neb.,* 79 F.3d 717, 721 (8th Cir. 1996) (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)). "The good faith of [state] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." *Sunday Lake,* 247 U.S. at 353. Without more, "opprobrious epithets" like "'willful' and 'malicious'" and characterizations of an officer's conduct "as an unequal, unjust, and oppressive administration of the laws" are not enough.  *Snowden*, 321 U.S. at 10.

To the extent plaintiff is asserting an equal protection claim, he can only be attempting to assert a "class-of-one" equal protection claim. The Supreme Court recognizes a "class of one" equal protection claim "where the plaintiff [does] not allege membership in a class or group," but instead "plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *accord Barstad v. Murray Cnty.*, 420 F.3d 880, 884 (8th Cir. 2005). "Identifying the disparity in treatment is especially important in class-of-one cases." *Barstad v. Murray County,* 420 F.3d 880, 884 (8th Cir. 2005).

However, this class-of-one theory has limits. Considering the importance of "a clear standard against which departures, even for a single plaintiff, [can] be readily assessed," the class-of-one theory may not apply to "some forms of state action … which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 602-04 (2008).

Here, plaintiff's equal protection claim fails because the allegations of the complaint do not establish that plaintiff was intentionally and purposefully discriminated against as compared to a similarly situated individual. Plaintiff has not alleged that there were others with prior violations who raised the same safety and security concerns as the violations received by plaintiff who did not receive the same punishment. Therefore, plaintiff cannot establish a "class of one" equal protection claim.

Nothing in the complaint indicates intentional or purposeful discrimination on the part of the defendants. For these reasons, plaintiff's complaint fails to state individual-capacity claims against defendants.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.00 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that an appeal of this action would not be taken in good faith.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 11th day of January, 2022.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE